UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Rahma Nur-Afi,                                Court File No. 08-CV-5096-DWF-SRN

                Plaintiff,

v.                                            **PLAINTIFF'S MEMORANDUM OF
                                              LAW FOR SUMMARY JUDGMENT**

Guidance Residential, LLC,

                Defendant.

---

Plaintiff, Rahma Nur-Afi ("Rahma"), submits the following Memorandum of Law in support of her Motion for Summary Judgment against Defendant, Guidance Residential, LLC ("Guidance").

## INTRODUCTION

Plaintiff, Rahma, commenced this action by service of a Summons and Complaint of a lawsuit venued in Minnesota District Court, Third Judicial District, Olmsted County, Minnesota.  Plaintiff seeks a declaratory determination that the Mortgage on her Homestead, originally granted to 2004-0000123, LLC and then immediately assigned to Guidance, is void because she did not sign or authorize such Mortgage.  Minnesota Statutes Sec. 507.02 and 507.04, Subd. 6 each clearly invalidate a mortgage on a homestead which has not been signed by both spouses.  Plaintiff further seeks damages for Defendant's slander of Plaintiff's title to the Homestead for not removing of record such void Mortgage after being put on notice of the invalidity of the Mortgage.

The Defendants acknowledged service of the Summons and Complaint and promptly removed the Plaintiff's lawsuit to this Court. Defendants correctly asserted in their Notice of Removal that this Court has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332. Plaintiff, Rahma, is a citizen of the State of Minnesota. 2004-0000123, LLC has been dismissed from this lawsuit. Guidance Residential, LLC is a citizen of Delaware and Virginia. Thus there is complete diversity between Plaintiff and the sole Defendant, Guidance. The amount in controversy is the validity of a $165,000.00 mortgage, and clearly exceeds the requirements for diversity jurisdiction.

The parties have completed discovery. Based upon this discovery, the undisputed material facts will show that Rahma is entitled to summary judgment granting her request for a declaratory determination that the Mortgage and Assignment are void, under Minnesota law, because the Mortgage and Assignment, which purport to be a lien on the home which is and has been Rahma Nur-Afi's homestead since 2004, was not authorized or executed by Rahma.

Plaintiff asserts that, from the facts and applicable law, the invalidity of the Mortgage is readily apparent. Therefore, Guidance, by its refusal to remove such void Mortgage from the title of the property has slandered Rahma's title, entitling Rahma to damages, in the amount of the costs incurred by Rahma to remove such Mortgage and Assignment of record from the title to her Homestead. These costs include Rahma's reasonable attorneys fees and the costs incurred in prosecution of this litigation.

2

## STATEMENT OF FACTS

## SUMMARY

The material facts in this case are straight forward.  Rahma Nur-Afi and Yasin Mohamed Jamal were married in Somalia in 1994.  They remained married until their formal divorce in 2008 by the Minnesota District Court.  In 2004, Yasin Jamal purchased a home for him, Rahma and their six children, located at 3046 Rose Heights Drive SE, Rochester, Minnesota ("Homestead").  They purchased the Homestead with cash.  Rahma Nur-Afi and her three daughters have occupied this property as their home since 2004. Yasin Jamal and Rahma Nur-Afi's four sons also occupied the property as their homestead until May 2007.

In November 2006, and apparently in contemplation and implementation of his plan to liquidate and take from Rahma Nur-Afi all of their marital assets, Yasin Jamal placed a Mortgage securing a debt of $165,600.00 on the Homestead, taking for his own use the loaned funds.  The Mortgage was given to 2004-0000123, LLC, an affiliate of Guidance, and then immediately assigned to Guidance.  Yasin Jamal, but not Rahma Nur-Afi, signed the Mortgage.  Guidance knew Yasin Jamal was married but chose not to inform Rahma Nur-Afi of the Mortgage or obtain her signature on the Mortgage.

Several months later, Yasin Jamal obtained a power of attorney from Rahma Nur-Afi and utilized it to sell the grocery store which they owned.  He then, on information and belief, took the proceeds of the Mortgage and the sale of the business and he took Rahma's four sons and traveled to Kenya.  Only after he was in Kenya did he advise Rahma Nur-Afi of his desire for a divorce.  Only after he left for Kenya did

3

Rahma Nur-Afi discover that he had sold the business and mortgaged the house for substantially its entire value.

Facts like this are the very reason the Minnesota Legislature enacted Minnesota Statutes Sec. 507.02 and 507.04, Subd. 6, which each invalidate any conveyance, including a mortgage, of the homestead if it lacks the signature of both spouses.

## FULL STATEMENT OF FACTS

1.      Rahma Nur-Afi is a resident and citizen of the State of Minnesota and has been for over 10 years.  (Aff. of Rahma Nur-Afi, ¶ 21, 34, Ex. C) (hereinafter "A. Nur-Afi").

2.      Defendant Guidance Residential, LLC is a citizen of the State of Delaware and Virginia, its sole member being Guidance Financial Group, LLC, a Delaware LLC with, in turn, one sole member, CG (IFS), Inc., a Delaware corporation with a principal place of business in Virginia.  (Aff. of Patrick Hennessy, Ex. F) (hereinafter "A. Hennessy").

3.      Rahma Nur-Afi was born in 1973 in Mogadishu, Somalia.  She is Muslim as were her parents.

4.      In accordance with the custom in Somalia, Rahma Nur-Afi received no education while she was a child.  She could not read nor write.

5.      Some time in 1993, Rahma Nur-Afi met Yasin Mohamed Jamal.  Shortly thereafter, Yasin Jamal met with Rahma Nur-Afi and her mother and stepfather and Yasin Jamal asked, in accordance with Muslim and Somali culture, Rahma Nur-Afi's

parents for permission to marry her.  Rahma's parents agreed and negotiated an

agreement with Yasin Jamal on the payment of dowry by Yasin Jamal to the parents.

6.     In early 1994, Yasin Jamal and Rahma Nur-Afi were married in a ceremony

which took place in Rahma Nur-Afi's parents' home in Mogadishu, Somalia (A. Nur-Afi,

¶ 7-13; A. Sadia Jama Mohamed).

7.     In accordance with Somali and Muslim culture, the marriage was presided

over by a Sheik.  Rahma was told the Sheik was authorized in Somalia to perform

marriages and was told the Sheik brought two men who served as witnesses for the

ceremony.

8.     In accordance with Somali and Muslim culture, the men, including Yasin

Jamal, the Sheik, the witnesses and the other men attending the wedding, were in one

room in the house during the ceremony.  Rahma Nur-Afi's stepfather represented her in

this room for the ceremony.  The women, including Rahma, attended the wedding in a

second room.

9.     Rahma Nur-Afi's stepfather confirmed that the marriage had been

completed in accordance with Somali law and Muslim practice.

10.     Rahma Nur-Afi understands that a marriage certificate was given to Yasin

Jamal from conversations she had with him.  Because she could not read, she has not, to

her knowledge, seen the document.  Rahma Nur-Afi understood and believes that Yasin

Jamal and her were married in accordance with Somali law and Muslin custom.

11.     Somalia has been a land at war since prior to 1994.  It has no centralized

organized government and has no reliable record keeping systems.  Rahma Nur-Afi has

no place to request a copy of a marriage certificate, or her birth certificate, or the birth certificate of her oldest son who was born in Somalia.

12.    Rahma Nur-Afi and Yasin Jamal lived as husband and wife since immediately after the wedding until May 2007 when Yasin Jamal left Rahma and their daughters.

13.    Rahma Nur-Afi and Yasin Jamal's first son, MYM, was born in June 1995. Shortly thereafter, Yasin Jamal, Rahma Nur-Afi and their son fled Somalia for Kenya because of the ongoing war in Somalia.

14.    The United States granted Rahma, Yasin Jamal and by then, their two sons, refuge and they moved to the United States in 1996 with Ms. Nur-Afi's mother.

15.    Yasin Jamal, Rahma Nur-Afi, their two sons and Rahma's mother, all moved to Cedar Rapids, Iowa where they lived approximately one and a half years in a duplex.

16.    While living in Iowa, Rahma Nur-Afi and Yasin Jamal continued to live as husband and wife.  They so identified each other when they met other people and they lived at all times together in the same house.

17.    Rahma Nur-Afi, Yasin Jamal and their family moved to Rochester, Minnesota in approximately 1997 as Yasin had obtained a job at IBM.

19.    In approximately 2000, Yasin opened a grocery store which he operated with occasional help from Rahma Nur-Afi.  Several years later, Yasin and Rahma purchased the building at which the store was located.

20.    Rahma became a United States citizen in 2005.

6

21.     From 1998 through 2007, Yasin Jamal and Rahma had five more children, two more boys and three girls.  The last of Rahma's and Yasin's daughters was born only days after Yasin kidnapped Rahma's four sons and secreted them to Kenya.

22.     In 2004, Yasin Jamal and Rahma Nur-Afi moved into a house located at 3046 Rose Heights Drive SE, Rochester, Minnesota 55904 (the "Homestead").  This property was originally titled in the name of Yasin Jamal (A. Hennessy Ex. B).

23.     Rahma Nur-Afi and her family continuously occupied the Homestead as their homestead from 2004 to the present.  Yasin Jamal and Rahma Nur-Afi's four sons occupied the house as their homestead from 2004 until May 2007 when Yasin took them to Africa (A. Nur-Afi, ¶ 34).

24.     The Homestead is legally described as follows:

> Lot 5, Block 2, Plat 3396, Rose Harbor Estates Fifth,
> Rochester, Olmsted County, Minnesota (A. Nur-Afi, Ex. C
> and D).

25.     When Yasin Jamal left Rahma for Kenya, he left her with very little money.

26.     Until Yasin Jamal left Rahma in May 2007, her principal occupation had been caring for their six children and helping out occasionally at the grocery store. Rahma Nur-Afi could not read, could not speak English and was dependent upon Yasin Jamal for support.

27.     After Yasin Jamal left for Africa, Rahma Nur-Afi discovered that Yasin Jamal, utilizing a power of attorney, had sold the grocery store.  (A. Nur-Afi, Ex. B).

28.     After Yasin Jamal had left, Rahma Nur-Afi also discovered that Yasin Jamal had granted a mortgage on the Homestead to an entity called 2004-0000123, LLC,

7

which Mortgage was recorded on October 31, 2006 as Document No. A-1117265 with the Olmsted County Recorder (the "Mortgage") (A. Hennessy, Ex. G).

29.     This Mortgage was then immediately assigned by 2004-0000123, LLC to Defendant Guidance Residential, LLC by Assignment recorded with the Olmsted County Recorder on October 31, 2006 as Document No. A-1117266 (A. Hennessy, Ex. H).

30.     At the time the Mortgage and Assignment were documented, Guidance was aware that Yasin Jamal was married and had six children.  His marriage had been disclosed to Guidance by Yasin Jamal in his initial loan application in August 2006 (A. Nur-Afi, Ex. F) (A. Hennessy, Ex. K).  His marital status had been further disclosed to Defendant Guidance Residential through the 2004 and 2005 tax returns provided by Yasin Jamal to Guidance Residential in connection with his loan applications, both of which disclosed the returns were jointly filed with Rahma Nur-Afi, as his wife (A. Hennessy Ex. L and M, A. Nur-Afi, Ex. E).

31.     In 2007, Rahma Nur-Afi commenced a formal dissolution proceeding in State Court, Minnesota District Court, Third Judicial District, County of Olmsted.  This was filed as Case No. 55-FA-07-7540.  (A. Nur-Afi, Ex. C).

32.     The petition and related motions were personally served on Yasin Jamal on August 28, 2007 (A. Hennessy, Ex. N).

33.     The State Court determined that Rahma Nur-Afi and Yasin Jamal were married to each other in the City of Mogadishu, Somalia in approximately 1993 and had been husband and wife ever since.  The State Court awarded Rahma Nur-Afi a divorce in early 2008 from Yasin Jamal.  The State Court awarded Rahma Nur-Afi title to the

Homestead.  The State Court made factual findings that Rahma Nur-Afi did not know of or consent to Yasin Jamal's grant of a mortgage on the Homestead to the Defendant, Guidance Residential (A. Nur-Afi, Ex. C and D).

34.     Although the State Court ordered Yasin Jamal to pay child support and maintenance, he has not done so.

35.     Rahma Nur-Afi has, since Yasin Jamal left, obtained regular employment. She is also going to school to learn to read and write and speak English.  She cares for her three daughters, including the oldest daughter who has severe learning disabilities.

36.     Rahma Nur-Afi has retained Patrick Hennessy and the law firm of Best & Flanagan in connection with this litigation.  Although this representation is pro bono, the terms of retention allow for the payment of fees if such fees are recoverable from the defendants.  Rahma Nur-Afi is also responsible for the costs incurred in the litigation.

37.     On May 29, 2008, Rahma Nur-Afi, through her counsel, made demand upon Guidance Residential, LLC to release its void Mortgage and Assignment, which are each a cloud on title on Rahma's Homestead (A. Hennessy, Ex. I).  This demand was based upon the invalidity of such Mortgage and Assignment under Minnesota law because it was a lien on the Homestead and had not been signed by Rahma Nur-Afi. Guidance has failed and refused to release the Mortgage and it continues as a cloud on the title of Rahma Nur-Afi's Homestead.  As a consequence, Rahma Nur-Afi has incurred costs to bring the instant action seeking a court determination that the Mortgage and Assignment are void and that Guidance Residential has slandered Rahma Nur-Afi's title to the Homestead by failing to remove the invalid lien.

9

ISSUES

1.      The Mortgage and the Assignment are void, as each of those documents

purports to convey an interest in Ms. Nur-Afi's homestead without her signature.

2.      Yasin Jamal and Rahma Nur-Afi were husband and wife at the time Yasin

Jamal executed the Mortgage and Assignment.  This is established in four ways:

(a)     The testimony by Ms. Nur-Afi and Sadia Jama Mohamed, as well as

numerous documents, including many submitted by Yasin Jamal to Guidance,

establish that Yasin Jamal and Rahma Nur-Afi were validly married in 1994 in

Mogadishu, Somalia.  This marriage is recognized as valid by the State of

Minnesota.  Yasin Jamal and Rahma Nur-Afi were husband and wife at the time

the Mortgage and Assignment were executed by Mr. Jamal.

(b)     The Minnesota District Court, Third Judicial District, in an action

initiated by Rahma Nur-Afi, has determined that Rahma Nur-Afi and Yasin

Mohamed Jamal were married in Mogadishu, Somalia on or about 1993 and have

been husband and wife since then until the date of the dissolution decree in March

2008.  This determination is entitled to full faith and credit by this Court and is not

subject to collateral attack by a stranger to the marriage.

(c)     Prior to living in Minnesota, Ms. Nur-Afi and Yasin Jamal lived in

Iowa for approximately one and a half years.  During that time they lived together

as husband and wife.  Iowa recognizes common law marriage.  Their marriage was

legally enforceable in Iowa before they came to Minnesota.  Minnesota courts

recognize, as a legal marriage, a common law marriage which has been established while persons were residents of another state or country.

(d)     Alternatively, the testimony by Ms. Nur-Afi and Sadia Jama Mohamed, and the documents, establish Ms. Nur-Afi's good faith belief that Yasin Jamal and Ms. Nur-Afi were validly married in 1994 in Mogadishu, Somalia and remained legally married at all times subsequent until the divorce in 2008. Ms. Nur-Afi is thus a putative spouse entitled to all the benefits of a full spouse pursuant to Minnesota Statute 518.055.

3.     Guidance's failure to release the Mortgage and Assignment of record, upon demand by Ms. Nur-Afi, is a slander of Ms. Nur-Afi's title to the Homestead, as such documents are clearly void because they are not signed by Ms. Nur-Afi.

## ARGUMENT

A.     <u>Standard for Granting Summary Judgment</u>.  Summary judgment must issue "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Matsushita Elec. Ind. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

The standard for summary judgment is governed by Federal Rule of Pro. 56, which provides, in pertinent part:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Rule 7056(c).)

The rule further provides in Rule 56(e) that:

> "When a motion for summary judgment in made and supported as provided in this rule [with affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510 (1986).

Summary judgment allows the court to look past the pleadings and assess the proof to determine whether there is a genuine need for trial.  Summary judgment is properly regarded as an integral part of the rules, designed "to secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548 (1986).

Ms. Nur-Afi asserts that all facts material to the her claims are undisputed in this case, and Ms. Nur-Afi is thus entitled to a finding on her claim that the Mortgage and Assignment are void as a matter of law.  Ms. Nur-Afi further asserts, as more fully discussed below, that any affirmative defense claimed by the Defendant will fail, as a matter of law.  Additionally, Ms. Nur-Afi can show that Guidance has failed to, and cannot produce facts which support any defense.

12

In defending against a motion for summary judgment, a party cannot rest upon mere allegations in the pleadings, nor may it simply argue that facts supporting its claims will be developed later or at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

When a party moving for summary judgment has met this burden, the "non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. A non-moving party must do more than raise some metaphysical doubt as to a material fact. *Id.* The non-moving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

To avoid a grant of judgment in favor of the plaintiff, the defendant must produce significant, probative, and substantial evidence that denies the existence of one or more elements of the plaintiff's cause of action, or that constitute the basis for a recognized affirmative defense. Only if the defendant produces evidence that is "significant" and "probative," *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990), as well as "substantial," *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir. 1987), on one or more of these elements will it have made out a genuine issue if material fact.

In short, to resist a motion for summary judgment, the defendant must demonstrate that it will be able to get enough evidence into the record at trial before the finder of fact, to support findings on an element as to which it has a burden of proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (standard in passing on motion for summary judgment mirrors standard for directed verdict under

13

Rule 50(a) (now called motion for "judgment as a matter of law")). *See also, Celotex Corp. v. Catrett*, 477 U.S. at 322, 323, 106 S.Ct. 2548; *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1459-1360 (8th Cir. 1993); *Hartnagel v. Norman*, 953 F2d 394, 396 (8th Cir. 1992).

B.    <u>This Court has Diversity Jurisdiction</u>.  This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332 based upon diversity.  Rahma Nur-Afi is a citizen of the State of Minnesota.  Defendant 2004-0000123, LLC has been dismissed from this case.  Guidance Residential, LLC is a limited liability company.  As a limited liability company, Guidance's citizenship is in the states its members are  citizens. *See One Point Solutions, LLC v. Borchert*, 46 F.3d 342, 346 (8th Cir. 2007); *GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). Guidance's sole member is Guidance Financial Group, LLC.  In turn, Guidance Financial Group, LLC's sole member is CG (IFS), Inc., which is a Delaware corporation.  Thus, the citizenship of Guidance is the same as the citizenship of CG (IFS), Inc.  Pursuant to 28 U.S.C. § 1332(c)(1), a corporation is a citizen of the state in which it is incorporated and of the state where its principal place of business is located.  The corporation is incorporated in Delaware.  Its principal place of business is in Virginia.  Thus, there is complete diversity between Plaintiff and the sole Defendant, Guidance.  Additionally, the amount in controversy, which is the validity of a $165,000 mortgage clearly exceeds the dollar amount required for diversity jurisdiction.

C.    <u>Mortgage on Homestead not Signed by Plaintiff is Void Under Minnesota Law</u>.  This is a diversity action governed by Minnesota law.  The property at issue, the

Homestead, is located in the State of Minnesota.  Plaintiff and her ex-husband, Yasin

Jamal, were both residents of the State of Minnesota at the time Yasin Jamal entered into

the Mortgage transaction.  This Court thus applies Minnesota law.  *See, Depositors*

*Insurance Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1094 (8th Cir. 2007).

In applying Minnesota law, this Court is bound by the decisions of the Minnesota

Supreme Court.  *See, Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir.

2006); *David v. Tanksley*, 218 F.3d 928, 930 (8th Cir. 2000).

Minnesota law provides special protections for both spouses with respect to

conveyance of any interest in a married couple's homestead.  In relevant part Minnesota

Statute Section 507.02 provides as follows:

> If the owner is married, no conveyance of the homestead, except
> a mortgage for purchase money . . . shall be valid without the signatures of
> both spouses.  A spouse's signature may be made by the spouse's duly
> appointed attorney-in-fact.

Additionally, Minnesota Statute Section 507.04, Subd. 6 provides as follows:

> **Validity of Homestead Conveyance**.  No conveyance of the homestead is
> valid unless each spouse or the duly authorized legal representative of each
> spouse joins in the conveyance by joint deed or by separate deeds.

An uninterrupted line of Minnesota cases have enforced these statutory restrictions

and have held not merely voidable, but void, any conveyances made without the

signature of both spouses.

> We have held many times that without the signatures of both spouses, a
> conveyance of a homestead property is not merely voidable, but is void and
> the buyer acquires no rights whatsoever. *Dvorak v. Maring*, 285 N.W.2d
> 675, 677 (Minn. 1979); citing *Anderson v. First National Bank of Pine City*,
> 303 Minn. 408, 411, 228 N.W.2d 257, 259 (1975); *Marr v. Bradley*, 239
> Minn. 503, 507, 59 N.W.2d 331, 333 (1953).

15

A mortgage is a "conveyance" for purposes of Section 507.02.  *See Minnesota Statute Section 507.01 (2002), Wells Fargo Home Mortgage, Inc. v. Chojnacki*, 668 N.W.2d 1, 4 (Minn.App. 2003).

The Mortgage and the Assignment (A. Hennessy, Exs. G and H) were not executed by Rahma Nur-Afi.  These documents are filed as liens against Rahma Nur-Afi's homestead.

The record is clear that prior to entering into the loan transaction with Yasin Jamal, Defendant Guidance had been made aware of the fact that he was married to Rahma Nur-Afi through both his loan application (A. Hennessy, Ex. K) and through the joint federal income tax returns submitted by Yasin Jamal in support of his loan application (A. Hennessy, Exs. L and M).  On the other hand, the facts are undisputed that Rahma Nur-Afi had no knowledge Yasin Jamal was granting this Mortgage and did not consent or otherwise authorize the Mortgage.

Through the testimony of Rahma Nur-Afi, as set forth in her Affidavit, and the testimony of her acquaintance, Sadia Jama Mohamed, the testimony of Liz Pratt, the "closer" who dealt with Yasin Jamal and Guidance in preparing for and closing the Mortgage and Assignment, and from documents obtained in discovery as attached to the Affidavit of Patrick B. Hennessy, Ms. Nur-Afi can establish overwhelming evidence that she was legally married to Yasin Jamal at the time the Mortgage and Assignment were executed by Yasin Jamal and that the real property subject to the Mortgage and Assignment was Yasin Jamal and Rahma's Homestead.  The facts are undisputed that

16

neither the Mortgage nor the Assignment were executed by Rahma Nur-Afi.  Given those

facts, Minnesota law is clear that the Mortgage and Assignment are void.

Guidance has not and cannot assert any facts which would give rise to an

affirmative defense.

D.   <u>Yasin Jamal and Rahma Nur-Afi were Legally Married at the Time the</u>

<u>Mortgage was Granted</u>.  "The validity of a marriage normally is determined by the law of

the place where the marriage is contracted."  *Seeley v. Erringer*, 239 Minn. 27, 30, 57

N.W.2d 638, 631 (Minn. 1953).  Additionally, a marriage may be established by meeting

the requirements of a domicile of the husband and wife.  Minnesota Statute Section

517.20 provides in relevant part:  "[A]ll marriages contracted within this State prior to

March 1, 1979 or outside this State that were valid at the time of the contract or

subsequently validated by the laws of the place in which they were contracted or by the

domicile of the parties are valid in this State."

The evidence is undisputed that Yasin Jamal and Rahma Nur-Afi were married in

1994 and lived as husband and wife until May 2007 when Yasin Jamal abandoned Rahma

Nur-Afi and their three daughters.  Rahma Nur-Afi and Sadia Jama Mohamed have each

provided evidence by Affidavit that Yasin Jamal and Rahma Nur-Afi were married at

Rahma Nur-Afi's parents' home in Mogadishu, Somalia.  The marriage was conducted in

accordance with Somali law and Muslim custom.  It was presided over by a Sheik, in the

presence of two witnesses, as well as friends and relatives of Yasin Jamal and Rahma

Nur-Afi.

Rahma does not have, and cannot obtain, a copy of her marriage certificate or license.  However, given the state of war in Somalia since the early 1990s and that country's lack of a central government, this is not surprising.

Rahma was told the marriage certificate was issued at the time of her marriage. With that license, her marriage not only meets the requirements of Somali law and Muslim custom, as she has testified, it would also meet the requirements of Minnesota law for a marriage contracted here.  Minnesota Statute Section 517.01 provides in relevant part:

> "Marriage, so far as its validity in law is concerned, is a civil contract between a man and a woman, to whom the consent of the parties, capable in law of contracting, is essential.  Lawful marriage may be contracted only between persons of the opposite sex and only when a license has been obtained as provided by law and when the marriage is contracted in the presence of two witnesses and solemnized by one authorized, or whom one or both of the parties in good faith believe to be authorized, to do so. Marriages subsequent to April 26, 1941, not so contracted, shall be null and void."

Rahma has testified that a marriage license was issued.  She has testified that the marriage was conducted by a Sheik recognized in law in Somalia as one who could solemnize a marriage.  She was married in the presence of at least two witnesses.

The evidence is undisputed regarding the marriage of Rahma Nur-Afi and Yasin Jamal.  The evidence is also undisputed that Rahma Nur-Afi and Yasin Jamal openly presented themselves as husband and wife at all relevant times until 2007.  Yasin Jamal clearly revealed to the Defendant that he was married, completing both a loan application which indicated he was married and providing copies of his married filing jointly federal

18

income tax returns for 2005 and 2004, each of which indicated the returns were filed jointly with his wife Rahma Nur-Afi.

E.     This Court is Bound by the State Court Determination of Marriage.  The Olmsted County District Court, in the dissolution proceeding initiated by Rahma Nur-Afi, necessarily found that Rahma Nur-Afi and Yasin Jamal were validly married. Although Yasin Jamal did not appear in this action, he was personally served with the petition and had the opportunity to do so (A. Hennessy, Ex. N).

"The courts of the state of the domicile of the parties doubtless have jurisdiction to decree a divorce in accordance with its laws, for any cause allowed by those laws, without regard to the place of the marriage . . . and a divorce so obtained is valid everywhere." *Warner v. Warner*, 219 Minn. 59, 67, 17 N.W.2d 58, 62 (1945).  The courts of each state thus have jurisdiction to decree divorces of their residents, regardless of where the marriage was contracted.  The Minnesota District Court clearly had jurisdiction for the dissolution proceeding of Rahma Nur-Afi and Yasin Jamal.  Rahma had been a resident of the State of Minnesota from 1998 until the proceeding was commenced.  Yasin Jamal had been a resident for almost 10 years before abandoning his family several months before the petition was filed.

The decision of the Minnesota District Court determining that Rahma Nur-Afi and Yasin Jamal were married and then decreeing a dissolution of such marriage is entitled to full faith and credit by other courts, including this Court.  The United States Supreme Court in *Sherrer v. Sherrer*, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed.2d 1429 (1948), held that a divorce decree issued by one state with jurisdiction was entitled to full

19

faith and credit by the courts in other states and could not be collaterally attacked in a subsequent action by a party.  The Supreme Court in *Johnson v. Muelberger*, 340 U.S. 581, 587, 71 S.Ct. 474, 478, 95 L.Ed. 552 (1951), expanded this holding to third parties, in holding that a Florida divorce decree could not be collaterally attacked by the heirs of one of the parties.

The Minnesota District Court having validly determined that Yasin Jamal and Rahma Nur-Afi were married, Defendant herein may not collaterally attack such decision.  *See State Ex Reo.  Scott v. Lowell*, 78 Minn. 166, 80 N.W. 877 (1899), *In re O'Rourke*, 310 Minn. 373, 375, 246 N.W.2d 461, 463 (1976).

F.  <u>Rahma Nur-Afi and Yasin Jamal had a Valid Common Law Marriage, Established While Domiciled in Iowa</u>.  Rahma Nur-Afi and Yasin Jamal's marriage would be recognized as valid,  regardless of its prior validity, as a common law marriage in the State of Iowa.  The evidence is clear that Rahma Nur-Afi and Yasin Jamal were domiciled in the State of Iowa for approximately one and a half years before moving to Minnesota.

Iowa has recognized common law marriage for well over a century, *Fisher v. Fisher*, 176 N.W.2d 801, 804 (Iowa 1970).  The elements of common law marriage are: "(1) [Present] intent and agreement . . . to be married by both parties; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife.  *In re Marriage of Winegard*, 278 N.W.2d 505, 510 (Iowa 1979), *In re Marriage of Martin*, 681 N.W.2d 612, 617 (Iowa 2004).  The evidence establishes that prior to becoming residents of the State of Minnesota, Rahma Nur-Afi and Yasin Jamal lived in Iowa for a

20

year and a half.  During this time, Rahma's testimony is that they believed they were and intended to be married, they continuously cohabitated, and they publicly declared each other husband and wife.  Thus, before they came to the State of Minnesota, and regardless of the validity of their marriage in 1994 in Somalia, Rahma and Yasin had established a common law marriage under the laws of the state of their domicile, Iowa. This marriage would be recognized as valid in Minnesota pursuant to Minnesota Statute Section 517.20, supra at 17.

The Minnesota Supreme Court has further found that, although common law marriages after April 1941 cannot be formed in the State of Minnesota, a Minnesota court will recognize a common law marriage, "if the couple takes up residence (but not necessarily domicile) in another state that allows common law marriages, and the parties thereby establish the public reputation in that state of having assumed a marital relationship, as well as other elements of a common law marriage." *Laikola v. Engineered Concrete*, 277 N.W.2d 653, 658 (Minn. 1979).  Thus Minnesota courts would recognize the validity of Rahma Nur-Afi and Yasin Jamal's common law marriage in Iowa, established before they moved and became domiciled in the State of Minnesota.

G.    Rahma Nur-Afi is Entitled to all of the Rights of a Spouse under Minnesota Law as a Putative Spouse.  Minnesota law, although not recognizing common law marriage, provides a person who cohabits with another in the good faith belief that they are legally married with substantially all of the rights of a spouse.  Minnesota Statute Section 518.055 provides in relevant part as follows:

"Any person who has cohabited with another to whom the person is not legally married in the good faith belief that the person was married to the other, is a putative spouse until knowledge of the fact that the person is not legally married terminates the status and prevents the acquisition of further rights.  A putative spouse acquires the rights conferred upon a legal spouse, including the right to maintenance following termination of the status, whether or not the marriage is prohibited or declared a nullity. . . .

The evidence and the records are overwhelming that Rahma Nur-Afi and Yasin Jamal were legally married.  It is even more overwhelming that Rahma Nur-Afi believed in good faith she was legally married to Yasin Jamal.  As such, she is entitled to all of the rights of a spouse as a "putative spouse."

H.     The Mortgage and Assignment Being Void, Defendant's Refusal to Remove them of Record is Slander on Plaintiff's Title to the Homestead.  Having established the Mortgage and Assignment are void, this Court should determine, as a matter of law, that Guidance has slandered Rahma Nur-Afi's title to the Property by its refusal to remove the Mortgage and Assignment of record after demand was made upon it to do so.  Rahma Nur-Afi is then entitled to her reasonable costs, including attorneys fees, as special damages for removing such interests of record.

The elements of a slander of title claim are as follows:

(1)     that there was a false statement concerning the real property owned by the plaintiff.
(2)     that the false statement was published to others.
(3)     that the false statement was published maliciously.
(4)     that the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.

*Paidar v. Hughes*, 615 N.W.2d 276, 279-280 (Minn. 2000), *See Wilson v. DuBois*, 35 Minn. 471, 472-473, 29 N.W. 68, 68-69 (1886).  Minnesota courts have held that "the

22

filing of a instrument known to be inoperative is a false statement that if done maliciously, constitutes slander of title. *Paidar v. Hughes*, 615 N.W.2d at 280, *Kelly v. First State Bank of Rothsay*, 145 Minn. 331, 332, 177 N.W. 347 (1920).

Thus the filing of a void mortgage can be a false statement.  The recording of such mortgage is publication.

At the time Guidance filed the Mortgage and Assignment, it was aware that Yasin Jamal acknowledged he was married and had represented to the Internal Revenue Service that he was married in filing joint tax returns.  Based upon the deposition of Liz Pratt, Guidance had had explicit discussions with the title company regarding the requirements that both spouses execute a mortgage for it to be valid in Minnesota if it encumbered their homestead property.  However, despite these discussions, and despite Guidance's knowledge of the marriage, it proceeded to record the Mortgage on the Homestead without so much as inquiring of Rahma Nur-Afi as to her marital status.  Plaintiff contends that this willful disregard of Plaintiff's rights under Minnesota law is sufficient to establish malice, particularly in the continued publication of the Mortgage, by failure to satisfy it of record when demand was made by Plaintiff.  At that time, Plaintiff provided Guidance with even more evidence of the invalidity of its Mortgage.

"The element of malice requires a 'reckless disregard concerning the truth or falsity of a matter' . . . despite a high degree of awareness of probably falsity or entertaining doubts as to its truth."  *Bricker v. One Land Dev. Co.*, 742 N.W.2d 706, 711-12 (Minn.App. 2007).

Plaintiff contends that the facts establish that Guidance proceeded with recording of the Mortgage despite a high degree of awareness of the legal problems with the Mortgage in that it was void.  It failed and refused to satisfy such Mortgage of record despite the awareness provided by Plaintiff that such Mortgage was void.

Finally, special damages have been recognized by the Minnesota Supreme Court to be the costs, including reasonable attorneys fees, incurred by a plaintiff in a quiet title action to remove a document slandering the plaintiff's title.  *Paidar v. Hughes, Supra*.

This Court should determine that the facts establish each of the elements of slander of title.  Plaintiff can then submit by motion a particular statement of the legal fees incurred by Plaintiff together with her taxable costs and the Court may determine damages.

CONCLUSION

The undisputed evidence in this case leads to the conclusion that in October 2006 Rahma Nur-Afi and Yasin Jamal were validly married, that the Homestead property was their homestead and that Rahma Nur-Afi did not sign the Mortgage and Assignment.  As a result, Minnesota law is clear, the Mortgage and Assignment are void and should be so determined by the Court.  Because this law and the facts are so clear cut, Defendant's failure to remove the Mortgage and Assignment of record, once such documents' invalidity under Minnesota law had been identified to the Defendant, is a slander of Plaintiff's title.  In light of the purposes of Minnesota law voiding mortgages on the homestead not signed by both spouses, and the vulnerability of this Plaintiff, such continued publication of the false and void Mortgage should be found malicious and a

24

slander on the title of Rahma Nur-Afi to the Homestead.  The Court should find that

Rahma Nur-Afi is entitled to special damages in the form of the attorneys fees incurred to

remove the Mortgage and Assignment of record together with her taxable costs.


Dated:  July 14, 2009                         BEST & FLANAGAN LLP


                                       By    s/ Patrick B. Hennessy
                                              Patrick B. Hennessy
                                              Atty. Registration No. 124412
                                              Attorneys for Plaintiff
                                              225 South Sixth Street, Suite 4000
                                              Minneapolis, MN  55402-4690
                                              (612) 339-7121